U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 18 2009

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RICHARD W. SALGUEIRO | CIVIL ACTION NO. 08-0730 |
| VERSUS | DISTRICT JUDGE WALTER |
| BRIM HEALTHCARE, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment filed on behalf of defendant, Brim Healthcare, Inc. [Record Document 12]. Plaintiffs oppose this motion. For the reasons assigned herein, defendant's motion is **GRANTED**.

I. **FACTUAL BACKGROUND**

Defendant Brim Healthcare, Inc. ("Brim") is a company that places healthcare executives at hospitals. In August 2007, Brim offered Plaintiff Richard W. Salgueiro ("Salgueiro") a position as Chief Executive Officer of one of Brim's client hospitals, Desoto Regional Health System ("Desoto"), in Mansfield, Louisiana. Brim sent Salguerio a letter detailing the terms of conditions of employment, which included a hiring date of October 1, 2007, a monthly salary of $11,666.67, relocation assistance, eligibility for group benefits, and three weeks vacation per calendar year (prorated for 2007). [Rec. Doc. 12, Ex. A]. Salgueiro accepted the offer by signing the letter and returning it to Brim. Salgueiro also signed an acknowledgment form indicating that he received a copy of Brim's Healthcare Employee Policies Manual. [Rec. Doc. 12, Ex. B]. Salgueiro worked as Chief Executive Office at Desoto from October 1, 2007 until he was terminated by the Board of Directors of Desoto in December 2007.

Page 1

A.  **Salguerio's Vacation Claim**

Salgueiro claims that after he signed the letter, he negotiated with Ray Ford ("Ford"), Brim's Vice President of Operations, for an additional thirty days paid vacation as he had a prepaid vacation planned in March 2008 with his family. [Rec. Doc. 15]. He alleges Ford told him that he would negotiate this with the Desoto Board, particularly with Albert Flanders, the Chairman of the Board of Directors, and later assured him that his thirty days of vacation had been front-loaded. [R. Salgueiro Dep. p. 12-14, 67]. Salgueiro also communicated his request for additional thirty days vacation to Rebecca Morse ("Morse"), who was the Human Resources Director of Brim at that time. [R. Salgueiro Dep. p. 19-22].

When Salgueiro received his first paycheck on November 30, 2007, there was a notation of "30" on the paycheck stub under vacation pay. He called Ford verify that the "30" meant 30 days rather than 30 hours, and contends that Ford assured him the "30" was 30 days. [Rec. Doc. 15].

Despite the numerous assurances Salgueiro allegedly received by Ford, the Board members deny ever discussing additional vacation time for Salgueiro. [Flanders Declaration ¶ 5, May Declaration ¶ 5, Germany Declaration ¶ 5]. Furthermore, Ford declares that Salgueiro never informed him of a need for more than three weeks of paid vacation in 2008 and that he never discussed Salgueiro's vacation time with the Board of Directors of Desoto. [Ford Affidavit ¶ 10-11].

Brim requests that summary judgment be granted as to Salguerio's vacation claim because he has received all vacation pay that accrued under the terms of his contract, and because the claim for additional paid vacation is unsupported by any evidence other than Salguerio's testimony. [Rec. Doc. 12].

B.  **Salguerio's Severance Claim**

Salgueiro also claims that he owed a severance payment of one month's salary from Brim and post-termination moving expenses. He asserts that he submitted a letter of resignation to Brim effective December 31, 2007, in order to facilitate a severance agreement. [Rec. Doc. 15; R. Salgueiro Dep. p.35]. Ford admits that he asked the Desoto Board to consider the possibility of a severance agreement and that the Board was initially willing, although there were conditions precedent to reaching a severance agreement. [Ford Affidavit ¶ 15]. In an email to Salgueiro, Ford indicated that while negotiations were in place for a severance payment, no agreement would be forthcoming until Salgueiro returned his laptop and Blackberry to the hospital. [Rec. Doc. 15, Ex. 7]. Salgueiro was also told to refrain from speaking to the media about confidential hospital operations. [Rec. Doc. 12, Ex. D]. Despite this condition, and acknowledging that no agreement was in place, Salgueiro spoke to a reporter with "The Tribune." [Rec. Doc. 12, Ex. D; R. Salgueiro Dep. p.45]. Ford sent another email to Salgueiro informing him that the communications with the media had "complicated the process" of getting the severance agreement together. [Rec. Doc. 15, Ex. 8]. Both Desoto and Ford deny that a severance agreement was ever reached. [Rec. Doc. 12; Ford Affidavit ¶ 16].

Brim requests summary judgment be granted as to Salguerio's severance claim because there was never an agreement for a severance payment or reimbursement for post-termination expenses. [Rec. Doc. 12].

## II.　LAW AND ANALYSIS

### A.　Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). A fact is "material" if it can "affect the outcome of the suit under the governing law." Id.

The burden of proof in a summary judgment proceeding is on the party moving for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556 (1986). When a defendant moves for summary judgment on the plaintiff's claim, he may satisfy the summary judgment burden in one of two ways: (1) show there is no evidence to support an essential element of the plaintiff's claim, or (2) submit summary judgment evidence that negates one of the essential elements of the plaintiff's claim. Celotex, 477 U.S. at 322-24, 106 S.Ct. at 2553; Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990). If the motion is properly made, the plaintiff "must set forth facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250; 106 S.Ct. at 2511. The plaintiff "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The court is to resolve all reasonable doubts about the facts in favor of the plaintiff. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

### B. Vacation Claims

Pursuant to Louisiana Revised Statute § 23:631, upon termination of an employee, an employer had a duty to pay the employee the amount then due under the terms of employment. Vacation pay is considered an amount then due only if: (1) the employee is deemed eligible for and has accrued the right to take vacation time with pay, and (2) the employee has not taken or been

Page 4

compensated for the vacation time as of the date the employee is discharged or resigns. La. R.S. § 23:631(d)(1).

Salgueiro asserts that he was eligible for and had accrued 30 *days* paid vacation time at the time of his termination for which he has not been compensated. However, Brim contends Salgueiro was eligible for and accrued only 30 *hours* of paid vacation time. Brim compensated Salgueiro for 30 hours of paid vacation time and thus argues that he has been paid all amounts due under the terms of employment. Brim alleges Salguerio's claims are not cognizable and should not survive summary judgment because (1) Salgueiro signed an offer letter than constitutes the full agreement of the parties as to vacation time and parol evidence is inadmissible to contradict such agreement, and (2) even if parol evidence is admissible, there is no evidence that Brim promised Salgueiro anything other than what he received.[1]

Salgueiro signed an offer letter that specifically included terms regarding his eligibility for vacation. The letter provided, "As a full time employee, you...will accrue **three weeks vacation per calendar year (prorated for 2007)**, and receive other benefits as outlined in Brim's Employee Policy Manual." [Rec. Doc. 12, Ex. A (emphasis added)]. Salgueiro also signed an Employee Acknowledgment Form acknowledging that he received a copy of Brim's Healthcare Employee Policies Manual and accepted responsibility for familiarizing himself with the information in the manual. [Rec. Doc. 12, Ex. B]. Included in the manual is a chart detailing the number of paid

---

[1] In response to Salguerio's allegations of Ford's oral promise that Salgueiro was entitled to 30 days additional vacation time, Brim also argues that Ford is not an agent of the Desoto Board of Directors and therefore is not authorized to make such promises. [Rec. Doc. 12]. Salguerio's claim of apparent authority is irrelevant to the analysis of his vacation claim. Regardless of whether Ford is an agent of Desoto, his oral promises to Salgueiro are inadmissible to modify or contradict the terms of the written contract. See infra.

vacation hours each employee is entitled to receive each year. A director or hospital CEO, who has 1-9 years of service, is entitled to three weeks paid vacation per year (15 days or 120 hours per year). [Rec. Doc. 12, Ex. C].

"When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." Peterson v. Schimek, 729 So.2d 1024, 1029 (La. 1999). In other words, when the terms of the written contract are stated clearly and unambiguously, parol evidence is inadmissible to explain or contradict the terms of the instrument. See Brown v. Drillers, Inc., 630 So.2d 741, 748 (La. 1994).

In the present matter, the terms of the offer letter are stated clearly. There is no ambiguity as to the terms of Salgueiro's employment, including the amount of vacation time to which he was entitled. Salgueiro signed the offer letter and thereby accepted the offer and terms of employment as provided in the letter.

Accordingly, because the terms of the contract can be construed from the four-corners of the instrument, parol evidence is inadmissible to modify or contradict the terms of the contract. Salgueiro cannot establish a claim under La. R.S. § 23:631 and Brim is therefore entitled to summary judgment as a matter of law on Salgueiro's vacation claims.

C. **Severance Claims**

Brim avers that summary judgment is appropriate on the issue of Salgueiro's claim because there was never a severance agreement. In his deposition, Salgueiro admits he knew any severance agreement resulting from his resignation must be approved by the Board of Directors of Desoto:

Q: Okay. Did you understand Ray Ford to have the ability to agree to a

> severance with you on his own?

A: No. And from the first, Mr. Ford, his statement to me was that I negotiate for you on behalf of you in which case Mr. Ford had to speak with the board chairman. In this case it was Mr. Flanders.

Q: So the board of Desoto would decide what the final agreement was?

A: Yes.

Q: Is that because Desoto was going to pay the actual severance?

A: Yes.

Q: Did you witness any of the negotiations between the Board and Mr. Ford?

\*\*\*

Q: Regarding your severance.

A: No.

[R. Salgueiro Dep. p.32-33].

The Board of Directors of Desoto was initially willing to negotiate a settlement agreement, subject to certain conditions, including that Salgueiro refrain from disseminating confidential information regarding hospital operations. This condition is evidenced by Salguerio's email to Ford, in which he states:

> Ray — I have been contacted by the press who wish to interview me regarding the Desoto issue. I know you mentioned not being able to talk about hospital operations in the scope of the severance agreement — **but not having that in place** I wanted to at least let you know about this.

[Rec. Doc. 12, Ex. D (emphasis added)].

Ford responded to Salgueiro and indicated that while he was still preparing a severance agreement, the agreement would have to be reviewed by the Board and that Salgueiro's "conversation with Edna [of "The Tribune"] complicated the process." [Rec. Doc. 15, Ex. 8].

Salgueiro's deposition testimony and the correspondence between Ford and Salgueiro demonstrate that Desoto and Salgueiro never had a severance agreement. Although negotiations for a severance payment commenced, there is no evidence that the Board authorized a severance agreement, that an offer of a severance payment was made to Salgueiro, or that Salgueiro accepted such an offer. Consequently, there is no genuine issue of material fact regarding Salguerio's severance claims and summary judgment should be granted as a matter of law.

### D. Apparent Authority

The Court notes that Salgueiro argues that Ford had "apparent authority" to enter into a binding severance agreement, and that Ford orally promised Salgueiro an agreement was in place. Although Salguerio's claim fails for the reasons stated above, the Court will address this issue in an abundance of caution.

Salgueiro argues that Ford's email implied a verbal agreement was in place and that Ford had "apparent authority" to negotiate on behalf of Brim. However, Salguerio's argument is flawed. It is an elementary rule of law that a *principal* is bound by the acts of a person acting with "apparent authority." See Tedesco v. Gentry Development, Inc., 540 So.2d 960, 963 (La. 1989). "Apparent authority is a doctrine by which an agent is empowered to bind his *principal* in a transaction with a third person when the *principal* has made a manifestation to the third person...that the agent is authorized to engaged in the particular transaction." Id. (internal citations omitted). In the present case, Salgueiro admitted that he knew the Board of Desoto must authorize a severance agreement and that Ford was not an agent of Desoto. [R. Salgueiro Dep. p. 32-33]. Moreover, there are no allegations or evidence that *Desoto* in any way made a manifestation to Salgueiro that Ford was authorized to enter into a severance agreement on their behalf.

As Ford was not an agent of Desoto and had neither actual nor apparent authority to enter into a severance agreement on Desoto's behalf, Desoto cannot possibly be bound by any promises Ford allegedly made to Salgueiro. Additionally, even if Ford did have apparent authority to bind Desoto, Salguerio's claims are against Brim, not Desoto. Salguerio's attempt to hold Brim liable on the ground that Ford was acting as an agent of Desoto is simply nonsensical and will not be accepted by this Court.

### III. Conclusion

The Court finds there are no genuine issues of material fact regarding either Salguerio's vacation claims or his severance claims. Accordingly, summary judgment is appropriate and Brim is entitled to judgment in its favor as a matter of law. All of Salguerio's claims against Brim shall be dismissed with prejudice.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 18 day of February, 2009.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE